# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

---

| | |
|---|---|
| **In Re**<br><br>TRACY CARPENTER and<br>DIANA CASTILLO<br>CARPENTER**,**<br>               **Debtors.** | **Case No. 06-40352-JDP**<br>**Chapter 7** |
| R. SAM HOPKINS, Trustee,<br><br>               **Plaintiff,**<br><br>**vs.**<br><br>JANA LANG,<br><br>               **Defendant.** | **Adversary Proceeding**<br>**No. 07-8034** |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

    Jim Spinner, SERVICE SPINNER & GRAY, Pocatello, Idaho, Attorney for Plaintiff R. Sam Hopkins, Trustee.

    Craig W. Christensen, Pocatello, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

In this action, the Court examines whether the retention of a security interest by the seller of a pickup truck to the debtor shortly before bankruptcy may be avoided by a trustee as a preference under § 547[1] of the Bankruptcy Code. The Court concludes that the transfer was indeed a preference, and that the exception to avoidance relied upon by the seller is inapplicable. As a result, the trustee may avoid the seller's security interest.

### *Procedural Status of the Action*

On March 12, 2007, Plaintiff R. Sam Hopkins, the chapter 7 trustee in the bankruptcy case of Tracy Carpenter ("Debtor"), commenced this adversary proceeding against Defendant Jana Lang, Debtor's sister. Plaintiff's complaint seeks a judgment avoiding a security interest held by Defendant in the Debtor's truck as a preference pursuant to § 547(b). Defendant filed an answer denying that the security interest was avoidable.

A trial in this action was conducted on August 31, 2007 at which the parties appeared and offered evidence and testimony. At the conclusion of the trial, the parties were invited to submit supplemental briefs, and the issues were taken under advisement. Having now carefully considered the record, the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (2005).

MEMORANDUM OF DECISION - 2

arguments of the parties, and the applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law and disposition of the issues. Fed. R. Bankr. P. 7052.

*Facts*

On July 27, 2006, Debtor filed for relief under chapter 7 of the Bankruptcy Code. Bk. Docket No. 1. Several months prior to filing his bankruptcy petition, Debtor had purchased a 2003 Chevrolet Silverado Duramax pickup truck from Defendant. Debtor and Defendant agreed Defendant would retain a security interest in the truck to secure Debtor's payment of the purchase price to Defendant at a later date.[2]

Debtor and Defendant negotiated the purchase and sale of the Silverado in December of 2005. After settling the various terms of their arrangement, the parties decided that Debtor would draft a simple written purchase agreement, and travel from his home in Preston to Defendant's residence in Blackfoot on December 11, 2005 to sign the contract and finalize the sale.

The simple written agreement Debtor prepared was executed by the parties at Defendant's house that day. It called for Debtor to pay Defendant a total

---

[2] The parties seem to agree that Defendant was to retain a security interest in the pickup sold to Debtor. The written agreement does not so provide. Plaintiff, as trustee, has not challenged the validity of Defendant's interest under § 544(a), and the Court expresses no opinion on this potential issue.

MEMORANDUM OF DECISION - 3

purchase price for the Silverado of $22,000, but the spaces in the agreement providing for an initial down payment and for subsequent monthly payments were left blank.[3]  Ex. 1.  The agreement provided that Debtor was to take delivery of the pickup on the date it was executed, December 11, 2005.  The contract required Debtor to secure insurance coverage on the truck by December 12, 2005.  *Id.*

The day before the parties were to meet to sign the deal, Debtor telephoned his insurance agent to inquire about insuring the Silverado.  Debtor discovered that it would be too expensive to carry insurance on both his current Ford pickup and the Silverado.  Debtor therefore decided it would be best not to take delivery of pickup from Defendant, nor to insure it, until he could sell the Ford.  Despite this decision, on December 11, 2005, Debtor traveled to Blackfoot with his spouse, met with Defendant, and signed the agreement as originally planned, making no changes to the contract's terms regarding the delivery date or his obligation to insure the Silverado by December 12, 2005.  Debtor did not take delivery of pickup at that time, and instead returned to Preston, leaving the Silverado in Defendant's garage in Blackfoot.  This arrangement was satisfactory to Defendant, and she continued her insurance coverage on the Silverado.

---

[3]  Debtor and Defendant both testified that these details were omitted because they intended to determine the amounts of the initial and monthly payments following the sale of Debtor's Ford pickup.  While Debtor sold the Ford shortly thereafter, the blank spaces in the agreement were never filled in.

MEMORANDUM OF DECISION - 4

A few days later, Debtor found a buyer for the Ford. On December 17, 2005, after being informed of this development by Debtor, Defendant cancelled her insurance coverage on the Silverado. On December 18, 2005, Debtor closed the sale on the Ford. On December 19, 2005, Debtor called his insurance agent, cancelled the coverage on the Ford pickup, and added the Silverado to his policy.

Debtor testified at trial that, having sold the Ford and obtained insurance on the Silverado, he had hoped to return to Blackfoot to retrieve the Silverado. However, this plan proved inconvenient. With the rapidly approaching holiday season, Debtor and his wife decided it would be best to wait until after Christmas to get the Silverado. Then, on December 27, 2005, Debtor's wife broke her wrist and underwent surgery; the following week Debtor's son required dental surgery. Because of these complications, it was not until January 4, 2006, that Debtor was able to return to Blackfoot. He took the Silverado from Defendant's garage and returned home with it.

Debtor then attempted to obtain a certificate of title to the Silverado. However, the county assessor's office informed him that to do so he needed the existing title certificate. Debtor contacted Defendant and asked her to sign off and send him the certificate. On January 27, 2006, Debtor received the title certificate

MEMORANDUM OF DECISION - 5

from Defendant.[4]  Debtor returned to the county assessor's office with the title and other necessary paperwork, and on January 31, 2006, the Idaho Department of Motor Vehicles issued a new certificate of title for the Silverado showing Debtor as owner and noting that Defendant held a lien on the pickup.  Ex. 3.

### *Conclusions of Law and Analysis*

Given these facts, two legal issues require analysis by the Court. First, was the Defendant's retention of a security interest in the Silverado a preference under § 547(b)?  And second, if Defendant's retention of a security interest is a preference, is the transfer insulated from avoidance by § 547(c)(3)?

**A.     The Transfer of the Security Interest in the Silverado was an Avoidable Preference.**

Section 547(b) provides:

(b) Except as provided in subsection (c) and (I) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made -

---

[4] In addition to the title certificate, Defendant also mailed a completed Bill of Sale, and an Idaho Sales Tax Exemption Certificate to Debtor.  Ex. C, O.  These documents were not executed at the same time as the agreement, but were required by the State to complete title transfer process.

MEMORANDUM OF DECISION - 6

> > (A) on or within 90 days before
> > the date of the filing of the
> > petition; or
> > (B) between ninety days and one
> > year before the date of the filing
> > of the petition, if such creditor at
> > the time of such transfer was an
> > insider; and
> 
> (5) that enables such creditor to receive more
> than such creditor would receive if -
> > (A) the case were a case under
> > chapter 7 of this title;
> > (B) the transfer had not been
> > made; and
> > (C) such creditor received
> > payment of such debt to the extent
> > provided by the provisions of this
> > title.

Under § 101(54), a creditor's retention of a security interest, or the creation of a lien in the debtor's property, constitutes a transfer for purposes of the preference provision. *Mann v. GTCR Golder Rauner, LLC*, 351 B.R. 708, 713 (Bankr. D. Ariz. 2006); *Lehtonen v. Time Warner, Inc.* (*In re PurchasePro.com, Inc.*), 332 B.R. 417, 427 n. 12 (Bankr. D. Nev. 2005). To avoid a transfer as a preference, a trustee must prove all the elements of § 547(b) by a preponderance of the evidence. *Crawforth v. H & H Enterprises, LLC* (*In re Larson*), 05.3 I.B.C.R. 74, 76 (Bankr. D. Idaho 2005) (citing *Elsaesser v. Cent. Pre-Mix Concrete Co.* (*In re Pioneer Constr., Inc.*), 01.2 I.B.C.R. 66, 67 (Bankr. D. Idaho 2001)).

MEMORANDUM OF DECISION - 7

At the trial in this action, Defendant conceded that the elements of a preference described in paragraphs (1), (2), and (4) of § 547(b) were satisfied under these facts. Elements (3) and (5) remained in dispute. However, and without significant opposition from Defendant, Plaintiff testified at trial and produced competent evidence, primarily based upon Debtor's bankruptcy schedules, that Debtor was indeed insolvent at the time of the transfer. Moreover, Plaintiff testified concerning the amount of creditor claims in the bankruptcy case and the assets he would have available to satisfy those claims. Based upon that testimony, and other evidence in the record, and without any contrary evidence from Defendant, if Defendant's security interest is not avoided, she will receive more in satisfaction of her claim against Debtor than she would have received in a chapter 7 case had the transfer not been made. As a result, the Court finds that Plaintiff has satisfied his burden of proving all the elements of § 547(b) preference.

**B.      The Enabling Loan Exception to Preference Avoidance Does Not Apply.**

Plaintiff may avoid the Debtor's transfer of the security interest to Defendant unless one of the statutory safe harbors to avoidance is shown to apply to the transaction. As affirmative defenses, it is Defendant's burden to prove she is protected by one or more of the preference exceptions under § 547(c). *In re*

MEMORANDUM OF DECISION - 8

*Pioneer Constr., Inc.*, 01.2 I.B.C.R. at 67 (citing *Elsaesser v. Am. Express Travel Related Servs. Co., Inc.* (*In re Taylor*), 95 I.B.C.R. 216, 218 (Bankr. D. Idaho 1995); 11 U.S.C. § 547(g).

Given the facts, Defendant acknowledges that the only provision of § 547(c) that is arguably applicable is the so-called "enabling loan" exception under § 547(c)(3). *See, e.g.,* 5 L. King, Collier on Bankruptcy ¶ 547.04[3] (rev. 15th ed. 2003). Under this exception, a trustee may not avoid a transfer that creates a security interest in property to secure payment of the purchase price "that is perfected on or before 30 days after the debtor receives possession of such property." 11 U.S.C. § 547(c)(3)(B). Here, whether this provision shields Defendant from avoidance of her security interest depends upon when Debtor "received possession" of the Silverado.

Plaintiff argues that upon execution of the agreement by the parties, Debtor was given "constructive" possession of the pickup, and thus the 30-day time limit for perfection of Defendant's security interest began to run on December 11, 2005. Since Defendant's security interest was not perfected by noting her lien on the certificate of title to the Silverado until January 31, 2006, Plaintiff contends the enabling loan exception does Defendant no good.[5]

---

[5] Under § 547(e)(1)(B) and (2), the transfer of a security interest in a debtor's personal property is deemed to occur for preference purposes at the time such transfer is

MEMORANDUM OF DECISION - 9

Defendant, on the other hand, argues that the 30-day perfection period did not commence until Debtor received actual, physical possession of the Silverado on January 4, 2006. If Defendant's construction of § 547(c)(3)(B) is correct, her security interest may not be avoided by Plaintiff.

The Bankruptcy Code contains no definition of the term "possession." However, this Court has interpreted the meaning of possession in the context of § 547(c)(3)(B) to refer to "*physical control or custody* of the collateral, as opposed to the acquisition of a right of ownership." *See Crawforth v. Treasure Valley Fed. Credit Union* (*In re Tuttle*), 03.3 I.B.C.R. 192, 195 (Bankr. D. Idaho 2003) (emphasis added). *See also, Hendon v. Gen. Motor Acceptance Corp.* (*In re B & B Utilities, Inc.*), 208 B.R. 417, 424 (Bankr. E.D. Tenn. 1997) (quoting *Logan v. Columbus Postal Employees Credit Union, Inc.* (*In re Trott*), 91 B.R. 808, 811 (Bankr. S.D. Ohio 1989). In *Trott,* the bankruptcy court concluded that there was "simply no reason . . . to depart from the definition of the word possession which has gained acceptance throughout the law[.]" *In re Trott*, 91

---

perfected under applicable law as against third parties, where that perfection occurs after 30 days from the date "such transfer takes effect between the transferor and the transferee . . . ." Defendant does not dispute Plaintiff's position that the transfer of the security interest in the Silverado from Debtor to Defendant was effective between the parties when they signed the purchase agreement on December 11, 2005. Therefore, since Defendant's security was not perfected under Idaho law until the application for certificate of title was filed on January 31, 2006, *see* Idaho Code § 49-510, for preference purposes, the transfer is deemed to have occurred on that date.

MEMORANDUM OF DECISION - 10

B.R. at 811. The court explained that possession, as generally understood in legal matters, meant "[t]he detention and control, or the manual or ideal custody [of something] . . . *either held personally or by another who exercises it in one's place and name*." *Id.* (citing Black's Law Dictionary 1047 (5th ed. 1979) (emphasis added)). In *Tuttle,* this Court agreed with *Trott*, noting that "to add gloss to the concept of possession [is] inconsistent with the plain language of the Code." *In re Tuttle*, 03.3 I.B.C.R. at 195. The Court further observed that the language of § 547(c)(3)(B) "contains no qualification or condition on the nature of a debtor's possession." *Id.*[6]

        In this case, from and after December 11, 2005, the date the parties executed the agreement by which Debtor purchased the Silverado and Defendant retained a security interest in it, the pickup, while still parked in Defendant's garage, was under Debtor's control. Defendant did not require that the Silverado be left with her after December 11. Instead, the arrangement was merely a convenience to Debtor. Importantly, both Defendant and Debtor testified that

---

[6] Specifically, in *Tuttle*, the Court rejected the creditor's argument that the meaning of possession was limited to those situations where a party's physical possession of the collateral is combined with an ownership interest in the property. In this case, Defendant acknowledges that Debtor held an ownership interest in the Silverado as of December 11, 2005. But while the creditor's argument in *Tuttle* was somewhat different, the Court's approach to determining the meaning of possession in § 547(c)(3)(B) is instructive.

MEMORANDUM OF DECISION - 11

Debtor could have taken the Silverado at any time thereafter.  Defendant never denied Debtor access to the pickup, nor did she charge Debtor to store the Silverado at her home.  Moreover, during the time the Silverado remained in Defendant's garage, Defendant cancelled her insurance, and Debtor added the pickup to his insurance policy.  This is consistent with the notion that, after December 11, Debtor was in control of the truck.  Furthermore, as Defendant's counsel conceded during argument at trial, after the purchase agreement was executed, Defendant had the original certificate of title to the Silverado, and nothing prevented her from immediately taking the necessary steps to transfer title and perfect her security interest in the Silverado, as opposed to waiting for Debtor to have the title transfer completed.[7]

Under these facts, the Court finds that Debtor had actual control of the Silverado as of December 11, 2005, and that from and after that date,

---

[7] Defendant argued at trial and in her brief that "possession" for purposes of § 547(c)(3)(B) means actual, physical possession. However, the cases relied upon by Defendant instead hold that possession turns instead on the right to control or custody of property, not actual, physical possession.  *See, e.g., Logan v. Bank of America* (*In re Ashworth*), 227 B.R. 801, 805 (Bankr. S.D. Ohio 1998) (for a mobile home, holding that "unfettered access" and "the ability to obtain keys" were "persuasive evidence" of possession and "access to, or simple physical control of the home" as determinative); *Westenhoefer v. Chrysler Credit Corp.* (*In re Williams*), 208 B.R. 882, 884 (Bankr. E.D. Ky. 1997) (relying on *Trott*, holding that "possession means 'physical control or custody of the collateral'"); *Scott v. McArthur Sav. & Loan Co.* (*In re Winnett*), 102 B.R. 635, 638 (Bankr. S.D. Ohio 1989) (another mobile home case, holding that "simple physical control of the property, even though [the debtors] did not have functional use from the very moment of delivery" is possession).

MEMORANDUM OF DECISION - 12

Defendant held the pickup merely as Debtor's agent for purposes of storing it until it was convenient for Debtor to retrieve it.[8] "If a debtor has actual physical control over the property before or at the time of an agreement granting a purchase money security interest therein, the [thirty] day window for the creditor's perfection of that interest under § 547(c)(3)(B) begins to close from the date of the agreement." *In re Tuttle*, 03.3 I.B.C.R. at 195.[9]

### *Conclusion*

Plaintiff has shown by a preponderance of the evidence that Defendant's retention of a security interest in the Silverado was a preferential transfer for the purpose of § 547(b). Because Debtor had "possession" of the pickup by virtue of his right to control it from and after December 11, 2005, even though it remained stored at Defendant's premises, and because Defendant did not perfect her security interest until January 31, 2006, the exception to avoidance in § 547(c)(3) does not protect Defendant. Plaintiff is therefore entitled to avoid Defendant's security interest.

---

[8] Had Debtor taken the Silverado on December 11 and stored it at a third party's premises, Defendant's "actual, physical possession" argument would be even less persuasive. The Court sees no reason to give that argument traction simply because Defendant, rather than some other agent of Debtor, had actual, physical possession of the Silverado.

[9] At the time *Tuttle* was decided, § 547(c)(3)(B) allowed a secured party only twenty days to perfect its interest. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") extended this grace period to thirty days.

MEMORANDUM OF DECISION - 13

Counsel for Plaintiff shall submit an approved form of judgment consistent with this decision for entry by the Court.

Dated: October 9, 2007

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 14